IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| NATHAN E. SCHNELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:14-cv-04322-NKL ) |
| CAROLYN W. COLVIN,<br>Acting Commissioner<br>of Social Security | ) ) ) ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is Plaintiff Nathan E. Schnell's appeal of the Commissioner of Social Security's final decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. [Doc. 16]. For the following reasons, the Commissioner's decision is affirmed.

**I.   Background**

Schnell was born on February 2, 1976 and resides in Boonville, Missouri. He has a high school education and past work experience as a telephone interviewer and a receptionist at a university. Schnell alleges a disability onset date of January 1, 2010 due to the combined effects of Crohn's disease, allergies, back pain resulting from a 2006 car accident, heart disease, and mental health problems, including bipolar disorder. [Tr. 44-45].

**A.  Medical History**

1

In 2008, Schnell presented to his primary care doctor, Dr. Robert Koch, with back pain. Koch noted tenderness over Schnell's lower lumbar back, upper lumbar, and mid-thoracic area. [Tr. 338, 344]. Schnell exhibited decreased range of motion of his back. [Tr. 338]. Since then, Dr. Koch has also examined Schnell regarding severe headaches, [Tr. 343], and symptoms of Crohn's disease, [Tr. 48].

Meanwhile, beginning in 2008, Schnell received treatment and therapy for mental ailments. Schnell saw Judith Dueker, LCSW, weekly between 2008 and 2012. From these appointments Dueker concluded that Schnell was frequently stressed, afflicted with mood swings and sleep problems, and preoccupied with regular tasks. [Tr. 431]. She opined that, in consideration of his physical and mental problems, Schnell was "unable to hold down a job or function in life without assistance." [Tr. 432].

Schnell also saw Dr. Glenna Burton, a psychiatrist, who treated him for bipolar disorder and panic disorder between 2009 and 2013. [Tr. 355-383]. Schnell complained to Dr. Burton of insomnia, depression, fatigue, panic attacks, chest tightness, and difficulty focusing. [Tr. 502]. Dr. Burton treated these symptoms with anti-depressant and anti-anxiety medications, but Schnell's anxieties were difficult to control, despite, in Dr. Burton's opinion, his highly motivated effort to become functional. *Id*. Dr. Burton opined that these anxieties stemmed in part from Schnell's other serious medical problems. [Tr. 435].

Dr. Burton completed a Mental Capacity Assessment. She diagnosed Schnell with Bipolar Disorder – Type I, Panic Disorder, and Generalized Anxiety Disorder, and she noted limitations in Schnell's ability to concentrate for an extended period, maintain an ordinary routine, operate within a schedule, work with others, maintain socially-appropriate conduct in a work setting, perform consistently in a work setting, and operate under unfamiliar circumstances.

2

[Tr. 434-35]. As a result, Dr. Burton wrote, Schnell's anxieties caused him to obsess over issues and "prevent[ed] him from engaging in any work situations." [Tr. 435].

Judith Dueker also completed a Mental Capacity Assessment and reached similar conclusions. *See* [Tr. 436-37].

At the time of his hearing, Schnell was taking college classes and required accommodation due to his Crohn's disease, which caused him episodes of severe pain. [Tr. 50]. He was given counseling, extra exam time, bathroom breaks, and greater schedule flexibility. [Tr. 47-48]. Schnell testified that he took allergy shots and used an inhaler, but still suffered allergy problems and was allergic to many items, and that he took medications for his bipolar disorder, but was still regularly anxious and worried, and often experienced tiredness and racing thoughts. [Tr. 52, 56, 57]. According to Schnell's testimony, he takes Hycosamine for his Crohn's disease, Zantac for his allergies, and Lovastatin to control his cholesterol. [Tr. 58].

Schnell further testified that he was limited in his performance of regular activities. While he attended his college classes, he had trouble studying due to headaches and often had to leave class in the middle. [Tr. 72]. While he could drive for 45 minutes, it bothered him to do so. [Tr. 71]. While he could shop for himself, he used an electric cart in Walmart and needed help bringing groceries to the car. [Tr. 79]. And while Schnell was active in his church, where he served as the vice president, he could not stand up along with the rest of the congregation. [Tr. 81].

**B. ALJ's Decision**

After hearing, the ALJ issued a decision on September 13, 2013. She found that Schnell suffered from the following severe impairments: "arthritis, gastric impairments variously diagnosed as colitis, history of Crohn's, irritable bowel syndrome, flexion deformity of the

3

bilateral fifth fingers, asthma with allergies, anxiety, panic, and bipolar disorder." [Tr. 20]. Nevertheless, the ALJ ultimately concluded that Schnell can "mak[e] a successful adjustment to other work," and "[a] finding of 'not disabled' is therefore appropriate." [Tr. 32].

As part of this analysis, the ALJ assessed Schnell's RFC as follows:

> [Schnell] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently, but not constantly perform fine manipulation; and must avoid concentrated exposure to dust, fumes, gases, and things of that nature; as well as unprotected heights and fast moving machinery. Furthermore, [Schnell] is limited to simple work, involving no more than routine work changes. He can interact appropriately with coworkers and supervisors . . . but he would do best if allowed to work fairly independently. Otherwise he can maintain a normal eight hour work day schedule.

[Tr. 23].

The ALJ arrived at this RFC by considering medical evidence, Schnell's testimony regarding his symptoms, and opinion evidence. The ALJ gave "some weight" to Dr. Burton's opinion that Schnell could not function or engage in work situations. [Tr. 29]. She gave weight to Judith Dueker's opinions regarding "severity and effect on function," but did not give weight to Dueker's opinion that Schnell could not function without assistance or maintain a job. *Id.*

The ALJ also gave "little weight" to Dr. Koch's opinion that Schnell suffered from a neuromuscular disorder, as Schnell had never been treated for such disorder and there were no neurological findings in the record, and she gave "some weight" to the opinion of Dr. Komes, a consultative examiner, who believed Schnell did not have work related limitations. *Id.* Finally, the ALJ gave "minimal weight" to the opinions of the state agency psychological and medical consultants who opined that Schnell had only mild physical and social limitations. [Tr. 30].

4

In explaining her treatment of Judith Dueker and Dr. Burton's opinions, the ALJ stated that both opinions are supported, to a degree, by the evidence of Schnell's mental impairments. However, "the limitations noted [in these opinions] far exceed the findings and treatment history noted in [Schnell's] medical records and paint a picture of an individual much more limited than [Schnell's] own admissions regarding his daily activities support." *Id*.

Specifically, according to the ALJ, the medical findings and treatment history indicate that Schnell's "treatment has not increased significantly" and he "has not required inpatient hospitalization" since his alleged onset date. [Tr. 25]. While Schnell has seen his primary care provider regularly, he has only rarely sought specialist treatment. For example, he saw a gastrointestinal specialist in 2010, who did not recommend any treatment; he visited a dermatology clinic in 2011, but reported that Claritin and Allegra were controlling his allergies; and he saw a GI specialist in 2013, who made no treatment recommendations. [Tr. 25-26]. Despite complaining of uncontrolled Crohn's disease, Schnell was not treated with immunosuppressants as of 2010, and was only regularly prescribed Levsin for abdominal pain, as of 2013. *Id*. He had a normal gastrointestinal examination when he saw his GI specialist; the specialist noted that the lack of findings indicated a diagnosis of irritable bowel syndrome instead of Crohn's. [Tr. 26]. Accordingly, Schnell's medical treatment since his alleged onset date "has been limited to refills of medications for eczema, allergies, asthma, and high cholesterol as well as hypertension." *Id*.

The ALJ furthermore noted Schnell's own report and testimony indicate he led an active, socially-engaged life after the alleged onset date. Schnell reported that:

> [H]e needed no special help or reminders to take care of personal needs, grooming, or medication and that he prepared his own meals, did laundry, and enjoyed playing video games, listening to

5

>               music and going to sporting events. He reported that [he] plays
>               cards, video game and watches TV with his friends and family and
>               that he goes to church whenever he can. [Schnell] reported that he
>               goes outside every day, drives a car, can go out alone and shops in
>               stores. He reported that he can pay bills, count change and manage
>               his own finances, and that he has no problem getting along with
>               others.

[Tr. 28].

According to the ALJ, the active life Schnell described was reflected in his stable mental state. In June 2010, shortly after his alleged onset date, Schnell reported to Dr. Burton that his depression was stable. [Tr. 25]. In Dr. Burton's notes in 2011, she observed that Schnell had only a mildly depressed mood. [Tr. 27]. Similarly, notes made subsequent to Schnell's sessions with David Fortel, LPC, at the Family Counseling Center in 2012 describe Schnell as calm and capable of managing his problems. *Id*. Dr. Robert Koch also noted normal psychiatric findings after a 2013 visit. *Id*.

Accordingly, the ALJ deemed the above testimony and medical history substantial conflicting evidence so as to discount Dr. Burton's and Judith Dueker's opinions of the intensity of Schnell's impairments. These opinions, she concluded, were "out of proportion with the evidence as a whole." [Tr. 29].

**II.     Discussion**

Schnell argues that the Commissioner's decision is not supported by substantial evidence in the record as a whole. By discounting the opinions of Dr. Burton and Judith Duecker, Schnell contends, the ALJ improperly substituted her own inferences drawn from the medical record, rather than according appropriate weight to Schnell's treating physicians. Consequently, the ALJ

did not provide substantial evidence for her RFC assessment and thus the reversal or remand of her hearing decision is warranted.

The dispositive questions before the Court, therefore, are (1) whether the ALJ improperly gave "some weight" to Dr. Burton's opinion that Schnell could not function or engage in work situations and (2) whether the ALJ improperly discounted Judith Dueker's opinion that Schnell could not maintain a job or function without assistance.

### A. Dr. Burton's Opinion

Dr. Burton was a "treating source" for Schnell, as defined in 20 C.F.R. § 404.1502, because she had an ongoing treatment relationship with him between 2009 and 2013. As a treating physician, Dr. Burton's opinion is therefore entitled "controlling weight" and must be adopted by an ALJ if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). *See also Wagner v. Astrue*, 499 F.3d 842, 848–49 (8th Cir. 2007).

If it is not given controlling weight, a treating physician's opinion "is generally entitled to substantial weight," *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998), in which case an ALJ will apply the factors listed in 20 C.F.R. § 404.1527(c) to determine how much weight to accord. Such factors include the "supportability" of the physician's opinion by other evidence, 20 C.F.R. § 404.1527(c)(2)(3), and the opinion's "consistency" with that evidence, 20 C.F.R. § 404.1527(c)(2)(4). In other words, the ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015) (*citing Prosch*

7

*v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). Yet the ALJ must always offer "good reasons" for doing so. 20 C.F.R. § 404.1527(d)(2). *See also Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

The ALJ offered good reasons for discounting Dr. Burton's opinion. She found that the opinion was inconsistent with substantial evidence on the record because, contrary to Dr. Burton's conclusion that Schnell could not engage in any work situations, Schnell testified to taking classes, holding a leadership role at his church, and regularly participating in social situations. Dr. Robert Koch, Schnell's primary care doctor, noted normal psychiatric findings during a visit on May 31, 2013, two months before Dr. Burton ceased treating Schnell, and David Fortel, LPC, who Schnell visited at the Family Counseling Center, noted that Schnell had a "stable" mood and demonstrated improvement over the course of his sessions. [Tr. 476]. According to Fortel's notes, Schnell "presented as more calm and able to cope with problems" on January 30, 2013, [Tr. 478], was "[l]ess anxious" on February 20, 2013, [Tr. 479], and was "[o]pen and coping with issues related to health" on May 8, 2013, [Tr. 485].

Additionally, Dr. Burton's own treatment notes temper her later assessment of Schnell's mental impairments. On January 23, 2012, she wrote that Schnell was anxious but excelling in school and only "mildly depressed." [Tr. 396-397]. On May 7, 2012, Dr. Burton again discussed Schnell's anxiety level but again concluded he was "mildly depressed." [Tr. 508]. Due to this conflicting evidence, the ALJ chose not to accord Dr. Burton substantial weight regarding the degree of Schnell's impairment.

Eighth Circuit precedent supports this outcome. The Eight Circuit has affirmed ALJ denials of benefits where, as here, a treating physician's opinion is inconsistent with the opinions of other doctors in the record, with statements made by the plaintiff, or with past impressions

8

Case 2:14-cv-04322-NKL   Document 20   Filed 10/02/15   Page 8 of 11

held by the treating physician herself.  *See Miller*, 784 F.3d at 477-78; *Thomas v. Barnhart*, 130 Fed. Appx. 62, 63-64 (8th Cir. 2005) (treating physician's opinion was properly discounted as inconsistent with the evidence on record, based on "the lack of medical evidence supporting [plaintiff's] allegations, the type of medications taken, [and] the lack of more aggressive treatment"); *Smith v. Colvin*, 756 F.3d 621, 206 (8th Cir. 2014) (ALJ did not err in discounting treating physicians' opinions where these opinions were inconsistent with plaintiff's "routine and/or conservative" treatment, plaintiff's description of his daily activities, and a lack of supporting diagnostic evidence in the record); *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (treating physician's diagnosis of patient's alleged fibromyalgia was appropriately discounted because, in part, the diagnosis was not consistent over the period in question).

In *Miller*, the ALJ appropriately accorded "little weight" to the primary care physician because, despite the physician's belief that the plaintiff could not perform even sedentary work, statements made by the plaintiff and the reports of other physicians indicated he did, and could, lead a moderately active lifestyle.  *Miller*, 784 F.3d at 477-78.  Here too, despite Burton's belief that Schnell cannot perform in any work situation due to his mental impairment, Schnell's statements and the findings of other examiners provide substantial evidence that he does, and can, lead a functional life.  The Court thus cannot say the ALJ erred in reaching this conclusion.

Schnell nevertheless argues that, if an ALJ finds a treating source's opinion inconsistent with other substantial evidence in the record, this "means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected." [Doc. 16, p. 12].  Therefore Schnell unconditionally maintains that "the opinion of a treating physician must be afforded substantial weight." [*Id.*, p. 10].

9

Yet the authorities Schnell cites do not support this proposition. Schnell relies on 20 C.F.R. § 404.1527, which does not require an ALJ to accord a treating physician substantial weight regardless of the record. Rather, under the regulation, an ALJ must "consider all of the [listed] factors in deciding the weight [he] give[s] to *any* medical opinion," and these factors include an opinion's "consistency" with the record as whole, as discussed above. 20 C.F.R. § 404.1527(c) (emphasis added).

### B. Judith Dueker's Opinion

Schnell also argues that the ALJ improperly discounted Judith Dueker's opinion. In determining Dueker was not entitled weight for her opinion that Schnell could not maintain a job or function without assistance, the ALJ stated: "Like Dr. Burton's opinions, the limitations noted here far exceed the findings and treatment history noted in [Schnell's] medical records." [Tr. 29]. The ALJ further stated that Dueker is "not an acceptable medical source," and therefore her opinion "cannot constitute documentation of severe or disabling vocational limitations." *Id*.

The ALJ properly considered Dueker's opinion. Under 20 C.F.R. § 404.1513(a), an "acceptable medical source" can be a licensed physician, psychologist, optometrist, or podiatrist, or a qualified speech-language pathologist. A psychologist, in turn, includes "school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting." 20 C.F.R. § 404.1513(a)(2). By limiting "other licensed or certified individuals" to those professionals who work in a school, the regulation accordingly excludes licensed clinical social workers, such as Dueker, who do not.

Therefore Dueker is not an acceptable medical source. As a consequence, her opinion does not constitute a "medical opinion[]," 20 C.F.R. § 404.1527(a)(2), and she is thus not a treating source under 20 C.F.R. § 404.1502. Instead, Dueker is considered an "other source"

10

who may provide evidence "to show the severity of [Schnell's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. § 404.1513(d). An ALJ cannot ignore this evidence. *Strongson v. Barnhart*, 361 F.3d 1066, 1071 (8th Cir. 2004). Yet the ALJ does not need to adopt it or accord it controlling weight. SSR 06-03p, 2006 WL 232993 (Aug. 9, 2006).

Here, the ALJ considered Dueker's opinion "with respect to severity and effect on function." [Tr. 29]. She then discounted the opinion because, as with Dr. Burton's opinion, it was inconsistent with the record as a whole. As discussed above, substantial evidence supports the ALJ's conclusion.

**III. Conclusion**

For the foregoing reasons, the Commissioner's decision is affirmed.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: October 2, 2015
Jefferson City, Missouri